Filed 3/25/26  P. v. Tindle CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM JOSEPH TINDLE,<br><br>        Defendant and Appellant. | A171774<br><br>(Humboldt County Super. Ct. No. CR2103985) |

William Joseph Tindle appeals after a jury convicted him of one count of possession for sale of methamphetamine, with a special allegation that he was personally armed with a firearm, and one count of possession for sale of methamphetamine with a firearm.  (Health and Saf. Code, § 11378, former § 11370.1, subd. (a); Pen. Code, former § 12022, subd. (c).)[1]  The trial court sentenced him to 180 days in jail and two years on probation. Tindle contends the trial court erred by instructing the jury on an

---

[1] Health and Safety Code section 11370.1, subdivision (a) and Penal Code section 12022, subdivision (c) were amended by Proposition 36, an initiative measure adopted by the California voters in the November 5, 2024, General Election.  We cite to the version of the statute in effect when Tindle committed his offenses.

1

aiding and abetting theory because there was not substantial evidence that a second party committed a predicate offense to which he contributed. He also argues that the electronics search condition of his probation is unconstitutionally overbroad and that his counsel gave him ineffective assistance by failing to object below that the condition is unreasonable.

We conclude there was substantial evidence to support the aiding and abetting instruction, Tindle's constitutional challenge is as-applied not facial, and he forfeited it by failing to object below. We further conclude the record in this direct appeal does not show he received ineffective assistance of counsel. We will affirm.

## BACKGROUND

In late 2021, a Eureka police officer, Dustin Nantz, began investigating Alejandro Luna for drug trafficking. Using GPS trackers, Nantz identified three vehicles that Luna drove. One of those vehicles, a Ford pickup, was frequently located at the home of Tindle's mother, Rita S., where Nantz knew Tindle stayed. Confidential informants told Nantz that Luna was storing large amounts of drugs at Tindle's home. Nantz also identified another associate of Luna named William Egan.

In December 2021, Nantz noticed that one of Luna's vehicles was on its way back to Humboldt County from Modesto, a known source location for drug trafficking. Nantz and other law enforcement officers stopped the vehicle. Luna was not in the vehicle, but it contained four pounds of methamphetamine. Nantz searched Luna's residence and found a small digital scale

with a crystalline substance on the weighing section and four grams of methamphetamine.  Nantz found a quarter pound of methamphetamine at Egan's residence.

Later the same day, Nantz finally searched Rita S.'s home in Eureka, arriving between 4:00 a.m. and 6:00 a.m.  They knocked and announced, and Tindle answered the door pretty quickly.  Nantz asked whether there was any methamphetamine, cocaine, heroin, fentanyl, or firearms inside the residence.  Tindle said Nantz would probably find some methamphetamine and a firearm in his room.

Nantz identified one of the rooms as Tindle's bedroom based on indicia such as mail and a phone with Tindle's name etched into its back.  Nantz found one pound of methamphetamine in the nightstand next to the bed in that room.  Two loaded pistols in working condition were in a backpack on the bed near the nightstand.  A gun cabinet on the wall held three unloaded rifles, and there was an unloaded black powder pistol on the bed.  There was also a digital scale with a crystalline substance on the weighing section and a box of Ziploc sandwich bags.

Nantz and the officers searching the house made contact with Rita S.  They also found two people in the attic area of the garage attached to the house, who appeared to be living there.

Nantz was qualified as an expert in the possession for sale and drug trafficking of methamphetamine and opined that the methamphetamine was for the purpose of sale, based on the quantity of methamphetamine and everything found near it.

Nantz also explained that it was common for someone running a drug trafficking organization to store narcotics at someone else's residence and compensate them in money or narcotics. In Nantz's opinion, Luna was in charge of the organization.

After searching the house, Nantz spoke to Tindle again. According to Nantz, Tindle was not surprised that there was a pound of methamphetamine in his room. A recording of the conversation shows that Tindle confirmed that he had previously told Nantz that he had some meth and firearms in his room. Tindle said the meth was not his. Tindle initially said he did not know the name of the person it belonged to, but he thought the person's truck was outside the residence. Nantz asked whether the person was Alejandro Luna, and Tindle said yes. Nantz asked whether Luna paid Tindle or gave him meth to allow Luna to keep meth there, and Tindle said no.

Tindle was charged with possession for sale of a controlled substance in violation of Health and Safety Code section 11378, with a special allegation under Penal Code former section 12022, subdivision (c) that he was personally armed with a firearm. Tindle was also charged with possession of a controlled substance with a loaded, operable firearm in violation of Health and Safety Code former section 11370.1, subdivision (a). Nantz was the prosecution's only witness.

Tindle called Rita S. as a witness in his defense. Tindle had arrived at her house in Eureka around 1:30 a.m. the day the police arrived. He had not been there for two weeks. Rita S. said that she had inherited her husband's rifles and shotguns, and she

4

owned a pistol. She kept those guns in the room with the gun case, which she called a "catch-all bedroom," except that she sometimes kept her pistol in her room. Tindle stayed in a different room when he arrived that night, but he usually uses both rooms, as well as the rest of the house. Rita S. did not recognize the pistols that the police found in the backpack.

Rita S. met Luna a long time ago. He came over to take care of her apple tree and bushes. He had come over with a friend to help Rita S. with a television during the two weeks that Tindle was away. Rita S. stayed in her room while they were there and did not know what they were doing elsewhere in the house. Rita S. said Luna did not have a key to the house. She did not know if Luna had ever stayed overnight. Rita S. stayed in bed in her room most of the time and did not get around much. Rita S. did not know the man and woman were in her garage and had not given anyone permission to be in there.

Tindle testified in his own defense. He said he had been away from his mother's house for two weeks before the search. He had been helping his brother level a foundation in Lewiston. He left around 10:30 p.m. and arrived in Eureka around 1:00 a.m. the day of the search. Tindle immediately went to sleep. At 3:00 a.m., he was awakened by someone beating on the door. The police handcuffed him and told him they knew that Luna kept seven to ten pounds of methamphetamine at the property. Tindle was "a little bit surprised" by this.

Tindle denied storing or selling drugs for Luna, or ever selling drugs. He also denied telling the police they would find

5

drugs in his room. But he also claimed that when Nantz told him there was meth at the house, he believed Nantz so he said yes.

Tindle said Luna was an acquaintance whose vehicles he worked on. Tindle said he met Luna after working on a vehicle for one of Luna's friends. Luna's Ford pickup quit running a few blocks from the house, so Luna towed it to the house for Tindle to work on it. Rita S. met Luna independently.

Tindle showed Luna where a key to the house was hidden outside. Luna had been in the house but not often. Luna had showered and had changed clothes in the bedroom where the methamphetamine was found.

Tindle's brother Lonnie K. confirmed that Tindle had been helping him fix the foundation on a mobile home in early December 2021 and had left for Eureka one night around 10:00 or 10:30 p.m.

Among the jury instructions the trial court delivered were CALCRIM Nos. 400 and 401, which deal with aiding and abetting principles. The jury found Tindle guilty as charged.

The trial court sentenced Tindle to 180 days in jail and two years of supervised probation, with 61 days of credit. One of the conditions of probation states, "Defendant shall submit any electronic devices of which they are the authorized possessor as defined in Section 1546 of the California Penal Code to search and seizure at any time of the day or night, with or without a search warrant, by a supervision officer or other law enforcement officer."

6

**DISCUSSION**

## I. Jury Instructions on Aiding and Abetting

Tindle contends the trial court erred by instructing the jury on aiding and abetting because there was not substantial evidence that Luna committed a criminal act to which Tindle contributed.

"We review a claim of instructional error de novo." (*People v. Barber* (2020) 55 Cal.App.5th 787, 798.) It is error for a trial court to give an abstract instruction that correctly states the law but has no application to the facts of the case. (*People v. Cross* (2008) 45 Cal.4th 58, 67.) " 'The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. [Citation.] To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction. We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented. [Citation.]' [Citations.] Substantial evidence is evidence ' "of ponderable legal significance . . . reasonable in nature, credible, and of solid value." ' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408.) " '[T]he testimony of a single witness, including the defendant, can constitute substantial evidence' " to support a jury instruction. (*People v. Steskal* (2021) 11 Cal.5th 332, 346.)

"[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus — a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea — knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus — conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.) Tindle's argument focuses on the first of these elements.

There was substantial evidence that Luna committed the crime of possession of methamphetamine for sale, so the trial court did not err in instructing the jury that Tindle could be liable for aiding and abetting Luna's offense. As the jury here was instructed, the elements of possession for sale of a controlled substance like methamphetamine are: (1) the defendant possessed a controlled substance, (2) the defendant knew of its presence, (3) the defendant knew of the substance's nature as a controlled substance, (4) the defendant intended to sell the substance when he possessed it, (5) the controlled substance was methamphetamine, and (6) the controlled substance was in a usable amount. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1175–1176; see CALCRIM No. 2302.) Possession can be actual or constructive, with constructive possession existing "where a defendant maintains some control or right to control contraband that is in the actual possession of another." (*People v. Morante* (1999) 20 Cal.4th 403, 417.)

The testimony of Nantz and Tindle was sufficient to establish that Luna possessed the methamphetamine for sale. Tindle testified that Luna had access to the house and used the room where the methamphetamine was found. Nantz described the drugs found in vehicles and other residences tied to Luna, gave expert testimony about how drug traffickers store drugs in others' residences, and concluded from the quantity of methamphetamine and other circumstances that the purpose of the methamphetamine was for sale. A reasonable conclusion to draw from this testimony is that Luna possessed the methamphetamine found at Rita S.'s house, even if he was not in actual possession of it.

Even if Tindle's and Nantz's testimony did not connect Luna to the specific methamphetamine found at Rita S.'s house, Tindle's statements to Nantz after the search of the house provided the necessary connection. When Nantz questioned him, Tindle said he thought the methamphetamine belonged to the person whose truck was parked outside, whose name was Alejandro Luna. A recording of this conversation was played for the jury. Although Tindle claimed that he was simply agreeing with what Nantz had told him because Tindle believed him, the jury could have taken his statements as exactly what they appeared to be: statements that the methamphetamine belonged to Luna.

Tindle compares this case to *Perez*, but the cases are not similar. The defendant there was arrested with methamphetamine precursors, which he intended to sell to a

third person. (*Perez, supra,* 35 Cal.4th at p. 1223.) The trial court delivered aiding and abetting instructions because one of the prosecution's theories was that the defendant aided and abetted a third person's manufacture methamphetamine. (*Id.* at p. 1227.) *Perez* held the trial court erred by delivering the aiding and abetting instructions because no evidence showed the third person violated or attempted to violate a statute relating to manufacture of methamphetamine. (*Ibid.*) Here, by contrast, Tindle's own statements to the police were evidence that the large quantity of methamphetamine belonged to Luna. There was no error.

## II. Constitutional Challenge to Electronic Device Search Condition

Tindle contends the probation condition that he submit his electronic devices to warrantless search or seizure is unconstitutionally overbroad. "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) Tindle admits he did not challenge the condition in the trial court but contends his argument is cognizable on appeal because it is a facial challenge that raises a pure question of law.

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K., supra,* 40 Cal.4th at p. 880.) Applying this forfeiture

rule "to appellate claims involving discretionary sentencing choices or unreasonable probation conditions is appropriate, because characteristically the trial court is in a considerably better position than the Court of Appeal to review and modify a sentence option or probation condition that is premised upon the facts and circumstances of the individual case. Generally, application of the forfeiture rule to such claims promotes greater procedural efficiency because of the likelihood that the case would have to be remanded to the trial court for resentencing or reconsideration of probation conditions." (*Id.* at p. 885.) "[A] challenge to a term of probation on the ground of unconstitutional vagueness or overbreadth that is capable of correction without reference to the particular sentencing record developed in the trial court can be said to present a pure question of law" and be raised for the first time on appeal. (*Id.* at p. 887, italics omitted.) But not " 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." ' " (*Id.* at p. 889.)

Tindle's overbreadth argument does not raise a pure question of law that can be resolved without regard to the sentencing record developed in the trial court. He first contends that the search condition implicates his constitutionally protected

11

expectation of privacy in his electronic devices, which could perhaps be a question of law. But he then argues that the probation condition is not narrowly tailored to achieve its rehabilitative goal. He argues that nothing about his offenses or social or criminal history suggests that he is likely to use electronic devices for criminal purposes. This is a quintessentially fact-based argument that turns on the goals for rehabilitation and the facts in Tindle's specific case. The trial court would have been better positioned to evaluate Tindle's arguments concerning overbreadth in the context of his offense and criminal history, so Tindle should have raised his argument there in the first instance. Had he done so, the sentencing record would have been better developed to allow us to review Tindle's contentions. Tindle's failure to raise the issue below means he has forfeited it, and we will not consider it.

## III. Failure to Challenge Probation Condition as Unreasonable

Tindle finally argues that he received ineffective assistance of counsel because his counsel failed to object in the trial court that the electronic search condition is unreasonable under *In re Ricardo P.* (2019) 7 Cal.5th 1113 and *People v. Lent* (1975) 15 Cal.3d 481. To prevail on a claim of ineffective assistance of counsel, Tindle " 'must show that [his] counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.] On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was

12

asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' [Citation.] '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

We cannot find ineffective assistance of counsel on the record in this direct appeal because the record does not indicate the reasons for Tindle's counsel's failure to object and she could have had a reasonable basis for not objecting. *In re Ricardo P.*, *supra*, 7 Cal.5th at page 1118 applied our Supreme Court's longstanding rule from *Lent* that a " 'condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' [Citation.] The *Lent* test 'is conjunctive — all three prongs must be satisfied before a reviewing court will invalidate a probation term.' "

Tindle's counsel could have reasonably decided not to challenge the probation term relating to his use of electronic devices because she believed it was valid. As discussed *ante*, evidence at trial supported a theory that Tindle aided and abetted Luna in the possession of methamphetamine for sale, as part of Luna's larger methamphetamine trafficking operation. This implies some degree of communication and coordination between Luna and Tindle. Presumably for this reason another condition of

probation prohibits Tindle from associating with Luna and others involved in Luna's operation. The presence of Tindle's phone in the room where the methamphetamine was found suggests that Tindle used electronic methods of communication. Tindle's counsel could therefore have decided that there was a connection between the electronic search condition and Tindle's offense. Similarly, his counsel could have decided that the condition related to future criminality by discouraging Tindle from contacting Luna or other drug traffickers in the future. Tindle's counsel therefore could have determined that an objection to the condition based on *Lent* was unlikely to succeed. Even if these conclusions were ultimately incorrect and the condition is invalid under *Lent* (an issue we need not and do not decide), it is not inconceivable that Tindle's counsel believed the condition was permissible. Tindle's ineffective assistance of counsel claim in this direct appeal therefore fails. (*People v. Johnsen, supra*, 10 Cal.5th at p. 1165 [courts " 'will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions' "].)

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.

WE CONCUR:


STREETER, J.
MOORMAN, J.


*People v. Tindle* (A171774)

14